Thank you, Your Honor. Deanna Dotson, I'm representing Olifago Lemusu, and we'd like to reserve at least two minutes for rebuttal, for splitting the time. Right. OK. And I'll just refer to by his first name since we have the two Lemusus. Right. Olifago. Olifago and Herman. Right. And Olifago is contending that the charge against him for the gun in furtherance of trafficking crime 940 924 C. There was insufficient evidence to prove the nexus between the guns and the count one conspiracy drug conspiracy count. And there there were actually three. It's a hard argument to make. I mean, there was evidence from witnesses directly on how your client used each of the guns and nine millimeter and 45 during transactions for protection. I thought it was pretty clear. Well, you have to disregard that testimony. I, I, I disagree, Your Honor, because there were first there were three guns and the second superseding indictment had two guns. And then the third superseding indictment transferred and put in another gun. And during the search warrant, one gun was found in the living room. And there was the nine millimeter. That was the nine millimeter under the cushion under the cushion. Correct. And they testified that that was a gun he used in delivering the drugs. No, he didn't testify. He delivered. He used to testify. He testified he owned the gun. That was his guy. But several witnesses, as I read the record, testified that he carried the nine millimeter gun when delivering the drugs. Is that incorrect? I believe it's incorrect, Your Honor, because there was confusing testimony. First of all, Mattel, who was picked up from the airport with a folly. And that I think what Judge Nelson was asking is not whether you agree with the substance of the testimony, but whether she is incorrect in saying there was testimony by witnesses. I think there was testimony by witnesses, Your Honor, but the testimony by witnesses was not the same. Some said he had the nine millimeter. Some said he had some said that he did. That was my only. Right. But they also some that was the testimony was going for the to do the wire transfers, carrying the money. And some said he carried the gun in a fanny pack. Some said he carried it in a holster. You've answered the question. So there was confusing testimony as to when maybe he carried the nine millimeter gun. And it could have been while he was protecting the money going and taking the people to do the wire transfers, which was not count one. That was count two. The gun charge was for the drug trafficking conspiracy. The other gun, the 45, which was found in the truck. The things are not initially exclusive. After all, if you have a handy gun that you carry around for personal protection, then you might carry it around when you deliver the drugs. You might also take it with you when you go to the bank. I, I, I, I, I don't see where, well, where this is confused, either confusing or contradictory or. Well, because this court I mean, the cases have said that just mere possession of a firearm, even for protection, is not enough of a nexus to show for the 924 C conviction in furtherance of the drug drug trafficking crime. So they had to show that this nine millimeter gun was actually was was participating in furtherance of the drug conspiracy. And I don't think there was sufficient evidence to show that. Let's let's deal with it. Short of actually pulling the gun, you know, pulling it out in the middle of, you know, getting to a shootout situation or maybe a standoff situation where you actually pointed a gun during the crime. What, in your view, would satisfy the requirement? I mean, the gun is there like it's like a fire extinguisher. It serves when it sits on the wall and it's available in case of fire. So a gun is there. It provides us a measure of protection and safety because, you know, you can pull a gun if you get threatened. And I don't know what else that can be in between. I just don't. By the record, there was insufficient evidence to show that that particular one millimeter was. What would be sufficient in your in your judgment? What could the government short of saying the guy pull the gun and point it at somebody? Short of that. Well, what would satisfy the requirement? What evidence? What kind of evidence would satisfy the requirement in your case? The element that the drug, the manufacturing of the drugs and there were drugs that were found in the upstairs apartment. There was another gun that was found there. And there have been cases that have said if the gun is found in close proximity to where the drugs were found, where the manufacturing took place, that's enough of a nexus. This gun was not. This gun was found downstairs in a sofa, which could have been for just mere protection. The the testimony by some of the witnesses, they weren't sure if it was a nine millimeter. They weren't sure. Even one said, well, I don't know anything about guns, but he testified that that was the gun. But he wasn't sure. Was it the nine millimeter? Was it the 38? Was it the 45? Because there were these three particular guns. Actually, I think there was a fourth gun involved involved, a three. Why is this the kind of issue that we allow, that we allow juries to sort out? Well, to counsel counsel, you know, because you were consular trial. No, I was not. But you've seen trials. Yes. You know, the messy things, you know, stuff comes in. It's a little confusing, often contradictory. And then the lawyers stand up. This is what you believe. This is how the evidence backs up. And then we'll go on the other side. And that's the way the system works. Well, the problem with this, Your Honor, is because this count adds another 60 months or five years on top of his other sentence, which he serves after. So it's really important that this gun and then the jury instruction had two guns in count 11. And another argument is there was no special jury form verdict form to say which gun did they unanimously select as the gun that was in furtherance. The 45. The judge was very clear and instructing. They had to agree unanimously on one of the two guns. They didn't have to have a special verdict today. But how do we know which gun doesn't make any difference if a jury is instructed. You must agree on one gun and they come back and find guilty on that count. They agreed on one gun. But what if the gun that they agreed on is not the gun that could be proven that was in furtherance. Do you have any affidavits showing that there was any confusion in the jury? No, but we don't. We also don't know that there were two guns. We don't know which gun they were unanimous on or were they even unanimous on one gun or were they just unanimous on that? There was a gun. I'm afraid that's not going to get you very far on this court because we have lots and lots and lots of cases that say you presume that the jury followed the instructions. So saying we are not sure the jury says the jury was very clearly told you've got to agree on which gun. And we presume the jury followed the instruction. We have no evidence at all to believe they haven't. Now, I think you have a point when you say that because we don't know which gun they agreed on, we haven't satisfied there was sufficient evidence as to all or as to both guns. All of the guns. So if they agreed on the 45, that would have been supported. And we also have to be satisfied that had they agreed on the nine millimeter, that would have been supported. But we can't presume that six of them thought it was a nine millimeter and six of them thought it was a 45. And the judge said very clearly, you've got to agree on which gun. Correct, Your Honor. But we don't know which gun. And on the 45, the 45 was found in the truck which Afali was driving. He admitted guilt to possession of that gun and he was convicted for possession of that gun. So if he was convicted and have possession of that gun. But it's a conspiracy. It's a continuing enterprise. And it is enough if your client possessed the gun in coincidence of the crime at any time during the conspiracy. It doesn't have to be at the point of arrest. But my understanding of the 924 C for the in furtherance, he has to have possession in furtherance of this drug trafficking. In other words, at some point, it doesn't have to be the point of arrest. But there was no showing of adequate evidence, sufficient evidence to show that he actually had possession of that gun because it was always generally in the truck. Was it? Well, the truck belonged to both. But Afali testified that he's the one that always drove the truck, that Alifaga never drove the truck. OK, so so they find this gun in a truck that is owned by your client and that that is that is that your client admits he drives all the time. But the gun charge is not a conspiracy charge. It was specific to Alifaga that he was in possession of the gun, which gun in furtherance of the drug conspiracy. And I my time is up. I need to give the time to co-counsel. OK, we'll hear from co-counsel Ms. McMillan. Good morning, Your Honor. May it please the court. My name is Georgia McMillan. I represent defendant Herman Limusu, who I'll refer to as Herman. Our chief argument on appeal comes out of the Booker Blakely Apprendi cases, Your Honor, already mentioned in the previous case. I think anything that is Emily connected, Booker connected, you should probably not bother arguing. We don't know what the law is. We're waiting for Emily. So so that's all. There's no point in arguing it because we don't know what the law is. We have an in-bank case. We're waiting for an opinion. Very well, Your Honor. I think it will be. We will examine all these cases we're putting on hold after the opinion comes out. And if there's something that we need further help from counsel, then we'll ask for further briefing. But there's really no point in discussing it now. Your Honor, if I may. Just very briefly. I filed a supplemental brief after Blakely, before Booker. There was no mention of the Amaline case that's now on bank and the February decision that was pulled that we can no longer cite. But I do want to mention to the court that the government has basically agreed that the sentencing issue for Herman should be remanded for resentencing. Herman received a four level increase in his sentence for leadership role. That four level increase raised his sentence. Ten point four years, Your Honor. So it's highly significant. So I just wanted to mention that to the panel. Remanding for resentencing concerning leadership role in light of what? In light of Booker. But I think I've just told you that the whole question. What was this? Was this raised below? Was this a Booker objection made in the trial court? No, it wasn't. So that is completely governed by Amaline. This is what exactly what Amaline will deal with. What do we do with cases where the objection was not raised in the trial court and not raised in the appeal by Booker? Could be governed by that. It doesn't matter what the government conceded. We're going to do whatever Amaline says we should do. So which might include a remand. But it might. I hope it does. Very well. You understand remand is also to have the risk that the district judge may exercise discretion to go higher. So not everybody who wishes for a remand will be happy. They got it when the time comes. But in any event, trust me, this is not something we want to talk about right now. There's no point. Is there anything else that you believe needs argument? Yes, your honor. I'd like to speak about our chief argument in the opening brief, which is the constructive amendments of counts one, which is the conspiracy count to distribute drugs and count three, which is the drug, strictly a drug distribution count. Chief argument is that when the trial court instructed the jury on counts one and three, the court changed the indictment. As to count one, when the court. But defendants, particularly your client, joined in the instructions, right? Yes, he did, your honor. If it was error, it was invited error. That's what the government argues, your honor. We think the government sounds, you know, you, you, you now claim that this was an amendment of the indictment. But your client, your client offered this to the court and said, here, you do this. I don't see how this is not total waiver of the argument. I don't see the waiver. Your district court does exactly what your client urges him to do. That's that's what the judge does. And why isn't when a court does what the party asked for, why isn't the party going to stop from arguing in the court? There's two instructions at issue. One is the instruction on. They were both agreed to. They were both submitted by both parties. They were they were proposed by both parties and submitted. OK, so. So then. So why isn't that. Why isn't the act of agreeing to the instruction urging the district court to do this? Why doesn't that wash out any error as to the conspiracy count? The section that the government, the portion of the transcript of the instructions that the government points to is showing that defense counsel. I was not trial counsel, by the way. That defense counsel agreed to only shows defense counsel agreeing that formerly this count stated an amount of drugs as five hundred grams. And then it was changed to 50 grams. That's all. Nowhere else in the government's argument addressing this point. And count one, does the government show where there was some kind of affirmative waiver of these instructions? Well, how about when you submitted the defense lawyers submitted the instructions and said, you know, we agree to these things. Why isn't that all that you need? Doesn't have to go through every instruction and say, I waive this. I like that. I like that. When lawyers get up and say, yes, your honor, we both agree that these are the instructions. Why isn't that it? Why? Why is this the beginning and then your honor? Plain error is available to address this. And I don't think that the government sufficiently argues that plain error doesn't apply in this. Plain error operates when there's an absence of an objection. So when the district court does something or when the government proposes something and there's no objection from the defense, then we review by plain error. But here we are in the realm of invited error where the party not only fails to object, but actually affirmatively stands up and says, we agree. I don't know that the government points any to any place in the record where defense counsel affirmatively agrees. You just did. You just told us this was joint instructions. Right. But the fact that you changing defense counsel changing your position. No, I defense counsel jointly proposed instructions with the government. However, that's fact. When you say jointly proposed instruction, what you've said is the defense counsel at trial agree to these things and communicated to the court that. Your honor, that doesn't mean the error didn't occur. OK. This was this was a complex. It was a complex trial. It doesn't mean that the error didn't occur. But if we can't review it, then it doesn't matter whether an error did or didn't occur. Well, this our position is that the court can that it wasn't waived. The plain error applies in the case you cite for that proposition. It invited the our context in a situation where the defense counsel actually proposed the same. And the case you cite for our authority to review that is we did not cite a case for that. The government directs the court to I believe it's the Perez case. And that says we have authority. Perez says, I mean, it's a pretty dirty. Take the play on the judge to have counsel most enough and say, go ahead and do this. Well, your honor, and then come up and say, hey, the district judge did what we asked him to. And then and then here's what he's wrong. Reverse it and make him do it again. Your honor, I would be a terrible way to run a court system with all due respect. The idea that it's a dirty trick is simply not what was happening. Well, look at it practically. You just spent time trying this case, bringing witnesses from all sorts of places. You know, government witnesses have to take time off from work. Jurors and members of the community have just spent the time. The court has been occupied. Counsel have been paid. And counsel both stand up and say, this is okay. Judge, do it. You know, this is how we want you to start the jury. There has to be some justification for saying no after you sort of misled the court into doing this. Well, then they do all that, all the effort and time. And it's a pretty dirty trick on them to do that. Is there any claim here of ineffective assistance of counsel in joining? No, there is no claim of ineffective assistance of counsel. Your honor, this was a complex trial. It took place over 13 days. I just don't think that the idea that the phrase you've used twice now, that this was somehow a dirty trick by defense counsel to No, no, I'm sorry. I didn't mean to suggest a dirty trick. There's some sort of manipulation. For us to do after counsel have sort of told the judge it's okay. For us to sit here and appeal many, many months later to say, well, even though the lawyers all said it's okay, we're going to reverse you anyway. But, your honor, I think you mentioned it in a previous argument. Trials are messy. They're complex. And in hindsight, we see things more clearly. And so in hindsight, a year after this trial, there is a divergence between what was in the indictment and in the instructions. I'd like to ask a question on that, even though the red light is on. Let's assume that you're correct, that you didn't waive it. I don't see what error there was. The trial judge did not bury or constructively amend the indictment by not reading the jury the overt acts because the overt acts are irrelevant to the conspiracy charge. What is your response to that? I agree, your honor. However, the jury instruction on count one told the jury that it could convict Herman for conspiracy for any of the offenses in the indictment. And three of the offenses in the indictment went to the money laundering. And four of them were only against Alofaga. And so that sort of broadening of the conspiracy charge permitted the jury to convict Herman under count one, the conspiracy count for offenses that were not a part of the drug conspiracy. On count number three, the court, the indictment was specific to time. It was a transaction that occurred on April 4, 2002. However, the jury instruction on that count, count number three, broadened it to any period of time. All right. I understand your answer now. Thank you. Okay. We'll hear from the government. Okay. Thank you. May it please the court. I'm Ken Sorensen. I'm the assistant U.S. attorney that tried this case. Hi, Mr. Sorensen. Fine. Thank you. Anything in your report this morning that wasn't adequately covered by your brief? No, Your Honor. I think everything's adequately covered. I think there is some confusion on the part of counsel in this case regarding the instructions in the case. I think the court's aware of what that confusion is. And if the court has no direct questions to me about any of the issues in this case, then I'll go back over there. Would you address the issues that Ms. McMillan put in answer to Judge Nelson's question? Yes, Your Honor. Well, first off, I think that there is a little confusion on the part of Ms. McMillan regarding the charge in the case regarding the conspiracy. In this case, the government and the joint proposed jury instructions is Ninth Circuit Instruction 8.16. It wasn't modified at all other than to simply add in what the objectives of the conspiracy were. I have the charge in front of me right here. And the difficulty, I think, is that Ms. McMillan is confused over the difference between the objectives that are listed in the actual instruction and also in the portion of the charge that lists out what the indictment charges and the actual other offenses charged in the indictment. She seems to believe that somehow the judge instructed the jury that they had to find that Herman Lemusa was conspiring to commit, as the objective of the crime, some of the other crimes in the indictment, as opposed to the listed objectives in the actual charge. The actual charge is conspiring to distribute possessive intent to distribute and manufacture a controlled substance in violation of 841A1 of Title 21. In order to be found guilty of that, the jury had to find that the defendant conspired to possessive intent to distribute 50 grams or more, to distribute 50 grams or more, to manufacture methamphetamine. Those were the objectives. Apparently, Ms. McMillan believes that the charge later on, when it talks about, you must find that there was a plan to commit at least one of the crimes alleged in the indictment as an object of the conspiracy, with all of you agreeing as to the particular crime which the conspirators agreed to commit. She apparently believes that the judge was instructing, at that point, the jury that they had to find that he was, in order to convict him of Count 1, they had to find that he committed any of those other crimes as objectives. I think the confusion is that she's taken that one small paragraph and read it without the rest of 816, which basically lets the jury know that you have to find that he was conspiring to do the objective. So she's confused as to what the objectives are. At one point, I think she believes the objectives are the overt acts. At another point, it appears that she believes the objectives of the conspiracy were the other crimes alleged in the indictment, which included money laundering counts and gun counts. I think you've answered the question. Thank you. Thank you, Judge. You are out of time, but we'll give you a minute for rebuttal if you choose to take it. I think you're the one who observed it, sir. Thank you, Your Honor. I just wanted to mention one other issue, and that was on the search warrant. And I don't have time to go completely through it, but it was completely developed in my brain. You know, this is not the purpose of rebuttal. It would be a little unfair to raise a new issue with this counsel for the government. If you have rebuttal on the issues that were discussed earlier. Well, I don't have. He didn't rebut my issue, so I guess, Your Honor, I have nothing to. Would you like to? All right. Thank you very much. Good argument. Case just argued. We are going to take another recess. We'll be back in a few minutes for the balance of the council. All right. Sure.
judges: D.W. Nelson, Kozinski, Bea